IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JOSHUA ROGERS, | : |
| | : |
| Plaintiff, | : |
| v. | : CASE NO.: 1:13-CV-157 (WLS) |
| | : |
| MEDIACOM, LLC., | : |
| | : |
| Defendant. | : |
| _____ | : |

# ORDER

Before the Court is Defendant Mediacom, LLC.'s Motion for Summary Judgment against Plaintiff Joshua Rogers. (Doc. 21.) For the following reasons, Defendant Mediacom, LLC.'s Motion for Summary Judgment is **DENIED**.

## PROCEDURAL BACKGROUND

On September 25, 2013, Plaintiff initiated the above-captioned case by filing a complaint against Defendants. (Doc. 1.) On November 14, 2014, Defendant filed the pending Motion for Summary Judgment against Plaintiff. (Doc. 21.) On December 11, 2014, Plaintiff filed his response to Defendant's Motion for Summary Judgment and Statement of Material Facts. (Docs. 26, 27.) On December 26, 2014, Defendant filed their reply to Plaintiff's response. (Doc. 34.) Since the briefing period has closed, the Court finds that Defendant's Motion is ripe for review.

## SUMMARY JUDGMENT STANDARD

### I. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when a party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, 555 Fed. App'x 842, 847

1

(11th Cir. 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and

2

determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**II.   Local Rule 56**

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Defendant filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Doc. 21.) Likewise, Plaintiff timely filed his response to Defendant's statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Docs. 26, 27.)[1] Having established the applicable standards, the Court will now proceed with reviewing the merits of Defendant's Motion.

---

[1] Although Plaintiff has supplied the Court both with his written response to Defendant's Motion for Summary Judgment and Statement of Material Facts, the Court does note that he did not fully comply with the Local Rules of this Court. All respondents to motions for summary judgment are instructed to "attach to the response a separate and concise statement of material facts." M.D. Ga. L.R. 56. In this case, rather than attaching his Statement of Material Facts to his response, Plaintiff filed his Statement of Materials Facts as a separate docket entry. (Doc. 27.) Nevertheless, since Plaintiff did supply the Court with a separate and concise Statement of Material Facts the Court will consider it.

## FACTUAL BACKGROUND[2]

Defendant, a cable television and communications provider, hired Plaintiff as an Installer on February 11, 2008. (Doc. 21-2 at ¶ 1.) Plaintiff advanced within Defendant's company and became an Installer Technician. (*Id.* at ¶ 2.) An Installer Technician's job responsibilities included lifting and carrying loads up to seventy pounds, climbing poles, ladders, or other structures as needed, and working in confined areas. (*Id.*; Doc. 23 at 201.) As an Installer Technician, Plaintiff had to lift seventy pounds "about 20 times a day." (Doc. 23 at 51, ¶ 17.) While employed by Defendant, Plaintiff's supervisor was Ray Thomas. (Doc. 21-2 at ¶ 4.) On July 27, 2010, Plaintiff fell from a ladder while working for Defendant and sustained an injury that was initially diagnosed as a right knee strain. (*Id.* at ¶ 5.) On July 29, 2010, Plaintiff's treating physician provided Defendant a return to work recommendation and advised Defendant that Plaintiff should avoid climbing ladders, poles, or stairs, that Plaintiff should not bend squat, kneel, or crawl, and that Plaintiff should limit walking and standing. (Doc. 28-2 at 2.) In light of the restraints recommended by Plaintiff's physician over the course of several visits, Defendant allowed for Plaintiff to continue working on light duty. (Doc. 28-2; Doc. 28-10.) On September 22, 2010, Plaintiff's treating physician recommended further work restrictions and advised Defendant that Plaintiff not lift or carry loads in excess of twenty-five pounds. (Doc. 28-2.) In November 2010, Plaintiff's physician informed him that his injury, initially diagnosed as a knee strain, was instead a herniated disc. (Doc. 21-2 at ¶ 9.) Plaintiff's work restrictions continued after he was diagnosed with a herniated disc. (Doc. 27 at ¶ 10; Doc. 28-2 at 12-13.)

In April 2011, Plaintiff underwent back surgery, keeping him out of work until June 8, 2011. (Doc. 21-2 at 11.) On June 9, 2011, Plaintiff was released without any work restrictions. (Doc. 21-2 at ¶ 12, Doc. 27 at ¶ 12.) Four hours into Plaintiff's first day back to work no longer on light duty, he informed his supervisor that he was experiencing significant back pain. (Doc. 27 at ¶ 12.) Plaintiff's supervisor instructed Plaintiff to go home until he

---

[2] The following facts are derived from the Complaint (Doc. 1), Defendant's Statement of Undisputed Facts (Doc. 21-2), Plaintiff's Response and Statement of Undisputed Facts (Doc. 27), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure of materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff, as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

could consult his physician. (*Id.*) During his appointment, Plaintiff's physician informed Plaintiff he was completely unable to work for two weeks. (Doc. 21-2 at ¶ 14.) On June 15, 2011, Plaintiff's physician concluded that he could return to work on light duty and could not lift over twenty pounds. (Doc. 28-2 at 21.) Plaintiff's lifting restrictions at work were increased to forty pounds on July 20, 2011 and that restriction continued through August 31, 2011, when Plaintiff's physician recommended another MRI to determine if surgery was necessary. (Doc. 28-2 at 23.) After being on light duty for over a year with the exception of a few hours, Defendant placed Plaintiff on a leave of absence until he could return to work on full duty. (Doc. 21-2 at ¶ 17.) While Plaintiff was absent, Supervisor Ray Thomas had to make adjustments including reducing the total amount of hours he expected his staff to work. (Doc. 28-39 at 9-10.)

Plaintiff underwent a second surgery in October 2011. (Doc. 21-2 at ¶ 20.) On February 6, 2012, Plaintiff's physician listed his work status as totally disabled until after his functional capacity examination ("FCE"). (*Id.* at ¶ 21; Doc. 28-2 at 26.) On February 15, 2012, Plaintiff's physician conducted his FCE and determined that Plaintiff could return to his work as a Technician. (Doc. 28-17.) Plaintiff's physician specifically noted in the FCE that Plaintiff could occasionally lift seventy pounds and carry thirty-five pounds, and could frequently lift up to thirty-five pounds and carry eighteen pounds. (*Id.*) On March 15, 2012, Defendant's Human Resource (HR) Manager Leon Richardson sent Plaintiff a letter after reviewing his medical documentation that indicated Defendant's interest in finding employment for him that would accommodate his medical restrictions. (Doc. 21-2 at ¶ 23.) At the time, Plaintiff was not positive Richardson reviewed his FCE but indicates that he sent his FCE to Defendant's HR Department. (Doc. 23 at 85, 169; Doc. 28-34.)[3] On March

---

[3] The Court disagrees with Defendant's assertion that Plaintiff's affidavit should be disregarded as a "sham." (Doc. 34.) In order to strike an affidavit as a sham, a party must have provided clear answers to unambiguous question negating the existence of any genuine issue of material fact, and then subsequent to giving those answers provide an affidavit that contradicts, without explanation, that testimony. *Rodriguez v. Jones Boat Yard, Inc.,* 435 Fed. App'x 885, 887 (11th Cir. 2011) (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1985)). Every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. *Akins v. Fulton Cty., Ga.*, 278 Fed. App'x. 964, 968 (11th Cir. 2008). Courts should not disregard an affidavit unless such an irreconcilable difference arises between a previous testimony and that affidavit to suggest a "transparent sham." *Tippens*, 805 F.2d at 954. Plaintiff's deposition states that he cannot recall if he faxed his FCE report to Richardson. (Doc. 23 at 169, ¶ 22-23.) His subsequent affidavit

20, 2012, Plaintiff responded by phone to Richardson's letter. (Doc. 21-2 at ¶ 23-25; Doc. 23 at 215.) During their call, Richardson offered Plaintiff a job as a Direct Sales Representative that in addition to other responsibilities, required "installation, reconnect, and upgrade services where appropriate in specific markets." (*Id.*) Plaintiff was capable of performing the Direct Sales Representative duties but given what he had heard from current Direct Sales Representatives, had concerns. (Doc. 23 at 89-90.) Plaintiff remained interested in his past position as an Installer Technician and mentioned his physician's findings in the FCE that took place on February 15, 2012. (*Id*; Doc. 21-2 at ¶ 36.) According to Plaintiff, when he asked Richardson about his recent FCE, Richardson informed him that he would speak with corporate and get back to him. (*Id.*) Plaintiff did not affirmatively reject the Direct Sales Representative position during his first call with Defendant.

On the same day, March 20, 2012, Plaintiff was again called by Richardson about another job as a Commercial Account Representative position. (Doc. 21-2 at ¶ 35.) Plaintiff did not accept that Commercial Account Representative position while on the phone with Richardson either. During that call, Plaintiff claims he again mentioned his FCE. (Doc. 27 at 14, ¶ 49.) On April 17, 2012, Richardson sent Plaintiff another letter informing him that since Defendant had "not heard back from [him]" regarding the other work accommodations made and did not "return to work as requested", Richardson could only assume he was not interested in the offered job accommodations. (Doc. 28-13.) As a result, Richardson indicated that Defendant had "no choice but to end" Plaintiff's employment. (*Id.*) Plaintiff was told by Richardson that he should call him if he had any questions. (*Id.*) Plaintiff did not contact Richardson after receiving the April 17, 2012 letter. Plaintiff was surprised by Richardson's April 17, 2012 letter and claims that he was waiting to hear from Richardson regarding his FCE report and the possibility of being again employed as an Installer Technician. (Doc. 27 at 15-17, ¶¶ 58-59.) On April 30, 2012, Plaintiff received a Separation Notice from Defendant that stated that the reason for separation was "voluntary, other employment." (Doc. 28-18.)

---

affirmatively states he faxed the FCE results to HR for Defendant, "directed to the attention of Leon Richardson." (Doc. 28-34 at ¶ 40.) In the view of the Court, this discrepancy between Plaintiff's deposition and his subsequent affidavit does not rise to the level of a sham.

6

## DISCUSSION

### I. Plaintiff's *Prima Facie Case* under the ADA

Plaintiff argues Defendant discriminated against him as a result of his injury in violation of Americans with Disabilities Act (ADA). 42 U.S.C. § 12101, *et seq.* In instances like the case before the Court where there's no direct evidence of discrimination, the burden-shifting framework established in Title VII employment discrimination cases applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Holly v. Clairson Indus., LLC.*, 492 F.3d 1247, 1255 (11th Cir. 2007)("Under the controlling law [in the Eleventh Circuit], 'the burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.'"). Under the burden-shifting framework, a plaintiff alleging employment discrimination under the ADA bears the initial burden. *Lucas v. V.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). To establish a *prima facie* case for discrimination, a plaintiff must show he: (1) is disabled; (2) was a qualified individual at the relevant time, meaning he could perform essential functions of the job in question with or without reasonable accommodations; and (3) was discriminated against because of his disability. *Id.* (quotation omitted)(citation omitted). Only after a plaintiff establishes a *prima facie* case of discrimination under ADA, is a defendant required to proffer a legitimate, nondiscriminatory reason for the alleged adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)(per curiam). The Court will now consider Plaintiff's *prima facie* case for discrimination under the ADA and Defendant's arguments to the contrary.

### A. Plaintiff's classification as disabled under ADA

Defendant's Motion argues that Plaintiff's case should fail because he is not considered disabled under the ADA. The ADA defines a "disability" as: (1) a physical or mental impairment that substantially limits one or more major life activities of an individual; (2) a record of a physical or mental impairment, or (3) being regarded as having a mental or physical impairment. 42 U.S.C. § 12102(1). Although the ADA does not define "substantially limits" or "major life activity" in its definition of what constitutes a disability, courts can reference regulations crafted by the Equal Employment Opportunity Commission ("EEOC") for further guidance. *See* 42 U.S.C. § 12116 (requiring the EEOC to issue

regulations implementing Title I of the ADA); *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th. Cir. 1996). A "major life activity" includes "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i). "Substantial limits", as defined by the regulations, exist when an individual has an impairment that "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii). What constitutes "substantial limits shall be construed broadly" under the ADA and should not be a demanding standard to meet. 29 C.F.R. § 1630.2(j)(i). [4] "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability…." 29 C.F.R. § 1630.2(j)(ii).

Plaintiff asserts that as a result of his herniated disc requiring two surgeries restricting him from knelling, crawling, or climbing ladders, poles, or stairs, or lifting more than twenty to forty pounds at work, in addition to other restrictions keeping him from going to the store and doing household chores, he was clearly limited from handling major life activities both at work and at home. (Doc. 26 at 3.) To support this assertion, Plaintiff refers to the work recommendations made by his physician to Defendant. (Doc. 28-2.) Plaintiff's characterization of his physician's recommended work restrictions are supported by the record. Defendant is correct that the most persistent restriction was the amount of weight Plaintiff could lift or carry, but is incorrect that the other restrictions were not persistent enough to also be included as noted restrictions. Plaintiff was restricted from kneeling, crawling, and climbing a ladder, in addition to other restrictions, over the course of several visits with his physician.

---

[4] The Court's definition of "substantially limits" is consistent with the significant changes made in 2008 by Congress to the ADA, Pub. L. No. 110-325, 122 Stat. 3553, and ruling by the Eleventh Circuit, noting that the Supreme Court's view of "substantially limits" in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196-197 (2002) and progeny "had 'created an inappropriately high level of limitation'" and that "substantial limits" should be interpreted and applied with "a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior." *See* 29 C.F.R. § 1630.2(j)(iv); *Mazeo v. Color Resolutions Intern., LLC.*, 746 F.3d 1264, 1269 (11th Cir. 2014).

Given the physician's recommended restrictions, the Court finds that there is a genuine dispute of material fact as to whether Plaintiff is disabled under the ADA. If accepted by the trier of fact, there are sufficient facts to possibly support a finding that Plaintiff is disabled. Prior to changes made to the ADA in 2008, several decisions in the Eleventh Circuit, consistent with decisions in other circuits, held that lifting restrictions were not "major life activities" under the ADA. *See e.g., Kay v. Lester Coggins Trucking, Inc.*, 141 Fed. App'x 824 (11th Cir. 2005); *See also e.g., Greene v. United Parcel Service, Inc.,* 125 F.Supp.2d 517 (M.D.Ga. 2000). In light of changes made to the ADA in 2008, classifying lifting as a major life activity under the law, there is no longer confusion regarding whether lifting is a major life activity. Plaintiff throughout his employment with Defendant after his injury was restricted from lifting substantial weight in addition to other restrictions after his injury restricted him from bending, etc. In the view of the Court, considering the restrictions Plaintiff had, there is a sufficient dispute, based on the evidence, as to whether Plaintiff is disabled.

### B. Plaintiff's claim he is a qualified individual

Defendant's further asserts that Plaintiff is incorrect that he was a qualified individual under the ADA. A "qualified individual" is a person who, with or without reasonable accommodations, is able to perform the essential functions of a job she holds or desires. 42 U.S.C. § 12111(8). "In other words, the plaintiff must show that she can perform the essential functions of [his] job without accommodations, or, failing that, show that [he] can perform the essential functions of [his] job with a reasonable accommodation." *Rabb v. Sch. Bd. Orange Cty.,* 590 Fed.App'x 849, 850 (11th Cir. 2014)(per curiam)(unpublished)(internal quotations omitted)(citing *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)). "If the plaintiff cannot perform the essential functions of [his] job even with an accommodation, by definition she is not a qualified individual under the ADA." *Id.* Whether an aspect of a job is an essential function is decided on a case-by-case basis. *Ivey v. First Quality Retail Serv.,* 490 Fed.App'x 281, 285 (11th Cir. 2012). To determine the essential functions of a job, a court can evaluate written job descriptions, the amount of time spent on the job performing the function, and the work experience of past and present employees. 29 C.F.R. § 1630.2(n)(3). "Although determining the essential functions of a position may be a

fact-intensive inquiry, an ADA plaintiff 'ultimately must shoulder the burden of establishing that [he] was able to perform all essential functions of [his] position, at summary judgment,' and the employee bears the burden of adducing competent evidence from which a rational factfinder could find in his favor." *Mattingly v. Univ. of South Fla. Bd. of Trs.*, 931 F.Supp.2d 1176, 1182 (M.D. Fla. 2013)(citing *Laurin v. Providence Hosp.,* 150 F.3d 52, 59 (1st Cir. 1998).

Construing the record in a light most favorable to Plaintiff, the Court finds that an issue of material fact remains as to whether Plaintiff was a qualified individual. Defendant's job description for the Installer Technician position states that persons qualified for that position must be able to lift and carry loads up to seventy pounds. (Doc. 23 at 201.) How often Plaintiff would be required to lift or carry loads up to seventy pounds is not specified. While Plaintiff did suggest during his deposition that he had to lift seventy pounds "20 times a day" as an Installer Technician the Court cannot conclusively find that such a requirement could not be accomplished by Plaintiff given the results of the FCE in February 2012. The FCE crafted by Plaintiff's physician states that Plaintiff could "occasionally" lift up to seventy pounds for up to a third of the work day, and could "occasionally" carry a maximum of thirty-five pounds up to a third of the workday. While the Court acknowledges that Plaintiff was only permitted to carry up to thirty-five pounds, not the seventy pounds required, given the interchangeable use of "lift" and "carry" there remains a question of fact that should be left for a jury regarding the requisite qualifications necessary to adequately serve as an Installer Technician. Furthermore, whether lifting or carrying loads up to seventy pounds around twenty times a day constitutes more or less than a third of an Installer Technician's work day is not clear form the record before the Court. In short, Defendant has failed to demonstrate that no genuine issue of material fact remains as to whether Plaintiff was a qualified individual. As a consequence, the Court determines that enough evidence exists for a jury to possibly find that Plaintiff was qualified.[5]

### C. Plaintiff's claim he was discriminated against as a result of his disability

---

[5] Whether Defendant was aware of Plaintiff's FCE on February 15, 2012 (Doc. 28-17) is an issue of material fact that also should be left to a jury. As aforementioned in the Court's brief discussion of Plaintiff's affidavit being construed as a "sham" by Defendant, Plaintiff's suggestion that he faxed his FCE report to Defendant's HR Department is not so inconsistent with his prior deposition for the Court not to consider that evidence at this juncture.

Defendant also argues that Plaintiff has failed to show that he was discriminated against as a result of his disability. Plaintiff alleges that Defendant discriminated against him by failing to accommodate his disability. An employer unlawfully discriminates against an employee with a disability when the employer fails to make "reasonable accommodations" for the disability unless doing so would impose an undue hardship on the employer. 12 C.F.R. § 1630.9; *Lucas*, 257 F.3d at 1255. "An accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform essential functions of the job." *Id.* It is the initial burden of the plaintiff to identify an accommodation and to demonstrate that the accommodation allows him to perform the job's essential functions. *Id.* The duty of an employer to provide a reasonable accommodation to an employee is only triggered after a specific demand for an accommodation has been made. *McCarroll v. Somerby of Mobile, LLC.,* 595 Fed.App'x 897, 899 (11th Cir. 2014)(per curiam)(unpublished)(citing *Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir. 1997)("[T]he ADA provides no cause of action for 'failure to investigate' possible accommodations.") Furthermore, an employer is not required to provide every accommodation an employee desires or prefers if that accommodation is unreasonable. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

In determining the appropriate reasonable accommodation, it might be necessary for an employer to "initiate an informal, interactive process" with the employee who has a disability, in order to identify the precise limitations resulting from the disability, and then develop reasonable accommodations to address those disabilities. 29 C.F.R. § 1630.2(3). Amongst other things, a reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or medication of equipment or devices, … and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). While an employee is not required to accept an accommodation, if an employee rejects a reasonable accommodation, opportunity, or benefit necessary to perform essential functions of the position held or desired, that employee will no longer be considered qualified. 29 C.F.R. § 1630.9(d).

Defendant asserts that throughout Plaintiff's employment, attempts were made to reasonably accommodate his disability, and the required interactive process between the

11

parties broke down only after Plaintiff's refusal to engage. Specifically, Defendant points to Plaintiff's failure to affirmatively accept the Direct Sales Representative and Commercial Account Representative positions. Defendant's argument that Plaintiff rejected a reasonable accommodation and is not a qualified individual under the ADA is not applicable in the case at hand. Unlike *Walker v. Putnam Cty., Ga*, 2010 WL 3732111 at \*8 (M.D. Ga. 2010) cited by Defendant, where the plaintiff expressly rejected alternative employment options as an accommodation, there's no definitive evidence that Plaintiff did so in this case. While a conversation about alternative employment options took place between Richardson and Plaintiff, it is unclear whether those discussions were rejected by Plaintiff, devolved given Richardson's failure to follow up, or simply was an ongoing conversation expected to continue.

Defendant's argument in their reply that Plaintiff "never requested an accommodation" is inconsistent with the record before the Court and evidence supplied by Plaintiff as well. According to Plaintiff, in addition to his assertion he did not reject other employment options made by Defendant, he also contends he discussed accommodations related to the Installer Technician job. Whether Plaintiff's requested accommodations were reasonable or not is certainly a question for a jury, but the Court finds that the suggestion Plaintiff "never requested an accommodation" is not supported by the record. As a consequence, there is a genuine issue of material fact regarding whether Plaintiff was offered reasonable accommodations and rejected them.[6]

## II. Defendant's Rebuttal

Plaintiff's proof of a *prima facie case* under ADA shifts the burden of production to Defendant to provide a legitimate, nondiscriminatory reason for taking the challenged

---

[6] The Court notes for the record that since there remains a genuine issue of material fact as to whether Defendant provided adequate accommodations to Plaintiff, evidence of disparate treatment is not necessary. As noted by the Eleventh Circuit, "an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the ADA." In fact, the ADA statute itself, in requiring an employer to provide adequate accommodations contradicts the contention that the ADA requires comparators. *Id.* ("However, the very purpose of reasonable accommodation laws is to require employers to treat disabled individuals differently in some circumstances-namely, when different treatment would allow a disabled individual to perform the essential functions of his position by accommodating his disability without posing an undue hardship on the employer.").

employment action-- in this case, Plaintiff's termination. An employer may fire an employee for a good reason, a bad reason, or even a reason based on erroneous facts, as long as the reason is not discriminatory. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). If a defendant proffers a legitimate, nondiscriminatory reason for the challenged employment action then the plaintiff must demonstrate that the proffered reason or reasons was pretext for discrimination. *Id.*

Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff is his "continued inability to perform an essential function of his job as an Installer Technician." (Doc. 21-1 at 13, fn 12.) Defendant's legitimate, nondiscriminatory reason is noted, but not extensively addressed, in one footnote in his memorandum in support of his Motion. As a result, Plaintiff does not spend time directly refuting Defendant's legitimate, nondiscriminatory rationale, but does raise a genuine issue of material fact as to whether Defendant's argued reason is merely pretext. As aforementioned, it cannot be conclusively determined that Plaintiff was unable to perform the essential functions of his job as an Installer Technician in light of his FCE. Furthermore, there also remains a genuine issue of material fact as to whether or not Plaintiff was discriminated against because of his disability. Given the record, the Court finds that Defendant's legitimate, nondiscriminatory rationale does not suffice at this juncture to defeat Plaintiff's claim and could be construed by the trier of fact to be mere pretext.

## CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is **DENIED**. (Doc. 21.)

**SO ORDERED**, this   29th   day of September, 2015.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**